IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> **Plaintiff,** <br><br> v. <br><br> **[2] JEFFREY OSCAR REYES-RIVERA,** <br><br> **Defendant.** | **CR. NO. 08-324 (ADC/BJM)** |

## REPORT AND RECOMMENDATION

Jeffrey Oscar Reyes Rivera ("Jeffrey Reyes" or "defendant") is charged in the indictment with: conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, 15 U.S.C. §§ 78j(b) and 78ff(a), and 17 C.F.R. § 240.10b-5 ("Rule 10b-5") ("Count One"); conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 371 and 1343 ("Count Two"); conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(h), 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(a)(2)(B)(i), and 1957 ("Count Four"); and asset forfeiture subject to conviction on any of the other counts, pursuant to 18 U.S.C. § 982(a)(2)(A) ("Count Five").[1]  (Docket No. 3).  He moves to dismiss all counts under Federal Rule of Criminal Procedure 12(b)(3)(B) for failure to allege facts sufficient to state an offense. (Docket No. 57).  The government has opposed. (Docket No. 61).  The presiding judge referred the matter to me. (Docket No. 62).  For the reasons that follow, I recommend that defendant's motion be **DENIED**.

## BACKGROUND

The indictment alleges that Jeffrey Reyes and co-defendant Dilean Reyes (collectively,

---

[1] Jeffrey Reyes is not charged in Count Three in the indictment. (See Docket No. 3, p. 20-21).

"defendants") engaged in a "Ponzi" scheme to defraud investors through a bogus investment services corporation, Global Reach Trading ("GRT"), and other business entities. (Docket No. 3, ¶¶ 1, 14-16). As set forth in the indictment, GRT was incorporated in Florida in 2001 and in Puerto Rico in 2002, but was not registered or licensed to offer or sell investments to the general public by either Puerto Rico's Office of the Commissioner of Financial Institutions ("OCIF") or the federal Securities Exchange Commission ("SEC"). (Id., ¶ 1). Dilean Reyes was GRT's president and Jeffrey Reyes was GRT's accountant and one of its incorporators. (Id., ¶¶ 6-7). From 2001 to 2007, GRT allegedly solicited money from investors, which the defendants allegedly held in and transferred among a number of bank accounts at different financial institutions. (Id., ¶¶ 4, 9). The defendants also allegedly worked as GRT's promoters and sales agents, soliciting investments directly from potential clients with the promise of high rates of return in a short period of time. (Id., ¶¶ 10-12). Some of the investors in the alleged Ponzi scheme (in which monies fraudulently obtained from later investors are used to pay "returns" to early investors) were paid as a result of the alleged scheme, while others were not paid. (Id., ¶¶ 14-15).

Count One, brought under 18 U.S.C. §371, charges that from approximately April 2001 to April 2007, the defendants did knowingly and willfully conspire with each other and with others known and unknown to commit an offense against the United States, namely, to knowingly and willfully use and employ manipulative and deceptive devices and contrivances through means and instrumentalities of interstate commerce, directly and indirectly, in connection with the purchase and sale of securities from GRT. The indictment further alleges that the defendants employed schemes and artifices to defraud GRT investors and individuals of the general public, made untrue statements

of material facts, and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and engaged in acts, practices, and courses of business which operated and would operate as a fraud and deceit of GRT investors and individuals of the general public. (Id., p. 6-7).

The scheme to defraud, as described in the indictment, comprised defendants' offering investment interests to the general public in Puerto Rico and elsewhere, engaging in a pattern of deceptive conduct aimed at luring potential investors and persuading them to invest their money with GRT, and making misrepresentations in sales pitches to potential investors regarding the manner in which their investment funds would be used. The indictment extensively alleges the manner and means through which defendants sought to accomplish the scheme to defraud. (Id., p. 7-15). As a result of the scheme to defraud, more than 230 investors, mostly from Puerto Rico, allegedly delivered to defendants over $22,000,000. (Id., p. 8). The scheme's alleged object was for the defendants and others to unlawfully enrich themselves by fraudulently obtaining monies from GRT's investors by promoting, offering, and selling a "security." (Id.).

The indictment alleges four overt acts by Jeffrey Reyes in furtherance of the scheme to defraud: (1) that on or about May 25, 2002 defendant, with Dilean Reyes, made a presentation about the nature of a "high yield investment program" to M.A.G., an investor residing in Guaynabo, Puerto Rico, who decided to invest $1,000,000.00 after signing a "high yield investment contract"; (2) that from on or about July 9, 2002 to September 12, 2004 defendant, with Dilean Reyes, sold and renewed various investment contracts for a total of $625,000.00 to P.M.V.L., an investor residing in San Juan, Puerto Rico; (3) that from on or about July 15, 2003 to June 2, 2005 defendant, with

Dilean Reyes, renewed an investment contract for a total of approximately $7,433.00 to A.R.G., an investor residing in San Juan, Puerto Rico; and (4) that on or about January 9, 2006 defendant sold an investment contract for $75,000.00 to M.J.A., an investor residing in Cupey, Puerto Rico. (Id., p. 15-16).

Count Two charges that beginning in or about April 2001 and continuing until in or about April 2007, the defendants did knowingly and willfully conspire and agree with each other and others known and unknown to commit an offense against the United States, namely, to knowingly transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce certain writings, signs, signals, and sounds in interstate and foreign commerce, for the purpose of executing the scheme and artifice to defraud described above, all in violation of 18 U.S.C. §§ 371 and 1343. (Id., p. 16-17). The alleged object of the conspiracy was to use wire communications in furtherance of the aforementioned scheme and artifice to defraud, which in essence consisted of the defendants' fraudulent offer and sale of "securities" to obtain monies from GRT's investors in order to unlawfully enrich themselves. (Id., p. 17). The indictment alleges fourteen overt acts in furtherance of the conspiracy, namely, causing fourteen different wire transfers of money among specified bank accounts that allegedly belong variously to the defendants, GRT, defendants' other business entities, GRT sales agents, investors, and other persons. (Id., p. 17-20).

Count Four charges that in violation of 18 U.S.C. § 1956(h), beginning in or about April 2001 and continuing until in or about April 2007, the defendants did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to commit certain money laundering offenses under 18 U.S.C. §§ 1956 and 1957, to wit:

(a) to conduct and attempt to conduct a financial transaction affecting interstate

commerce, which transaction involved the proceeds of securities and wire fraud, with the intent to promote the carrying on of specified unlawful activities, in violation of 18 U.S.C. §1956(a)(1)(A)(i);

(b) to conduct and attempt to conduct a financial transaction affecting interstate commerce, which transaction involved the proceeds of securities and wire fraud, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified fraud, and that while conducting and attempting to conduct such financial transaction the defendants knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. §1956(a)(1)(B)(i);

(c) to transport, transmit, and transfer, and to attempt to transmit, transport and transfer monetary instruments and funds from the United States to or through a place outside the United States, and to the United States from and through a place outside the United States, in violation of 18 U.S.C. §1956(a)(2)(B)(i) ; and

(d) to knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally deprived property of a value greater than $10,000.00, that is, the deposit, withdrawal, and transfer of funds, as more specifically set forth in the indictment, such property having been derived from securities and wire fraud, in violation of 18 U.S.C. §1957.

(Id., p. 21-23). The alleged object of the conspiracy was for the defendants and others known and unknown to launder the illegal proceeds obtained from the scheme and artifice to defraud described

above, which consisted in essence of the defendants' fraudulent offer and sale of "investment contracts" to obtain monies from GRT's investors, as a result of which the defendants unlawfully enriched themselves. The defendants allegedly promoted the scheme to defraud through a Ponzi scheme and allegedly concealed the illegal nature, origin, and source of the fraudulent proceeds by conducting monetary transactions to purchase or lease various items. (Id., p. 23). The indictment alleges the manner and means through which defendants sought to accomplish the conspiracy. (Id., p. 23-24).

The indictment alleges fourteen overt acts in furtherance of Count Four's scheme to defraud, namely, defendant's making or causing to be made certain wire transfers, debit transactions, and checks drafted from various specified bank accounts. The money allegedly went to jewelry companies, motivational and educational materials, relatives of the defendants, commissions for promoters and sales agents, payments of "returns" to early investors, rent on an apartment in Spain, down payments on a house and a commercial building, and the purchase of several apartments. (Id.).

## DISCUSSION

Jeffrey Reyes moves to dismiss Counts One, Two, and Four on the grounds that they do not allege facts sufficient to state an offense under the respective statutes. Defendant also moves to dismiss Count Five, the forfeiture count, due to its contingency upon the other counts. The government replies that the indictment is facially valid, contains more than sufficient allegations to state violations of the charged offenses, and fully complies with the relevant procedural requirements. I will consider Counts One, Two, and Four in turn.

    A.    **Count One: Securities Fraud Conspiracy**

Defendant argues that in order to establish a criminal violation of the securities laws, the

government must show that the defendant acted willfully, and that the indictment falls short of this showing. Defendant does not otherwise challenge Count One's sufficiency. (Docket No. 57, p. 5). The government replies that the indictment complies with Federal Rule of Criminal Procedure 7(c)(1) ("Rule 7(c)(1)"), contains specific, detailed, precise allegations of the securities fraud conspiracy charged, and expressly states allegations as to defendant's criminal *mens rea*. (Docket No. 61, p. 2, 3).

Defendant confuses the facts which the prosecution must establish at trial on the merits of a criminal action with the allegations required to be made in an indictment charging a criminal offense. Rule 7(c)(1) requires that "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The goal is to provide enough information to make the defendant aware of the charges against which she must defend and allow her to plead an acquittal or conviction in bar of future prosecutions for the same offense. United States v. Acevedo Vila, 588 F. Supp. 2d 194, 201 (D.P.R. 2008) (internal citations and quotation omitted). The indictment's allegations are presumed to be true for the purposes of assessing whether an indictment is sufficient to withstand a motion to dismiss, and inquiry into whether the government can prove its case at trial is inappropriate at this stage. Id. at 201 (internal citation and quotation omitted).

Count One expressly alleges that "the defendants[] did *knowingly* and *willfully* conspire and agree together . . . to commit the following offense against the United States: to *knowingly* and *willfully*" violate Rule 10b-5 by defrauding GRT's investors and individuals of the general public. (Docket No. 3, p. 7)(emphasis added). Count One tracks the language of 18 U.S.C. § 371. As required, it alerts Jeffrey Reyes to the charge against him, the time period of the unlawful alleged

activity, the parties claimed to be involved, and the specific conduct at issue. Id. (internal citations omitted). It alleges that the defendants agreed to illegally sell fraudulent "securities" to the general public in order to unlawfully enrich themselves, and alleges several specific overt acts which name Jeffrey Reyes in particular. Moreover, Count One alleges that the defendants acted knowingly and willfully. Under Rule 7(c)(1), nothing more is required. The government has sufficiently alleged that defendant acted with the requisite intent, and it need not meet its ultimate burden of proof at this stage. Acevedo Vila, 588 F. Supp. 2d at 201.

### B. Count Two: Wire Fraud Conspiracy

Defendant next argues that Count Two should be dismissed because the indictment does not show that Jeffrey Reyes specifically intended to deprive anyone of money or property. Defendant does not allege that Count Two's allegations are otherwise deficient. (Docket No. 57, p. 5). The government responds, as above, that it has adequately charged a wire fraud conspiracy under Rule 7(c)(1) and has specified in detail the object of the charged conspiracy and the overt acts allegedly committed by Jeffrey Reyes in furtherance of that conspiracy. (Docket No. 61, p. 2, 3).

Again, defendant confuses the government's burden of proof at trial with its duty at the indictment stage. "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offen[s]e intended to be punished." Hamling v. United States, 418 U.S. 87, 117 (1974) (internal citation and quotation omitted). Count Two follows the language of 18 U.S.C. § 371, describes the object of the conspiracy, and alleges several overt acts as required by the statute. The adherence to the statutory language and the inclusion of detailed factual allegations are sufficient to satisfy the requirements

of Rule 7(c)(1).

Furthermore, Count Two sufficiently alleges the elements of the object offense of wire fraud. "Knowingly" and "willfully" describe the requisite mental state for wire fraud, though 18 U.S.C. § 1343 does not use those exact terms. United States v. De Castro-Font, 587 F. Supp. 2d 372, 374 (D.P.R. 2008). Rather, the statute uses the language "having devised or intending to devise a scheme or artifice to defraud" to connote the necessary mental state, and this court has found that there is nothing uncertain or ambiguous about this language. Id. at 375. Count Two adequately alleges this mental state: it tracks the language of the statute, alleges that defendants conspired "to knowingly transmit . . .", and incorporates by reference Count One,[2] which alleges the scheme or artifice to defraud employed by defendants. Count Two describes the scheme in detail, states a number of overt acts, and also reincorporates the general allegations' description of the scheme. (Docket No. 3, p. 7, 16-20). These allegations set forth the elements of the object offense; defendant's argument to the contrary is unavailing.

### C. Count Four: Money Laundering Conspiracy

Finally, Jeffrey Reyes argues that Count Four, which charges a conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), fails to state an offense. (Docket No. 57, p. 5-7). Count Four alleges that the defendants did "knowingly and willfully" conspire to commit four different money laundering offenses, namely violations of: (1) 18 U.S.C. §1956(a)(1)(A)(i); (2) 18 U.S.C. §1956(a)(1)(B)(i); (3) 18 U.S.C. §1956(a)(2)(B)(i); and (4) 18 U.S.C. §1957 (the "object

---

[2] "A count may incorporate by reference an allegation made in another count." Fed. R. Crim. P. 7(c)(1). "[E]ach count must be sufficient without reference to other counts *unless* the allegations of those counts expressly are incorporated." United States v. Yefsky, 994 F.2d 885, 894 (1st Cir. 1993) (emphasis added). Count Two expressly incorporates by reference Counts One and Four and paragraphs 1 through 16 of the general allegations of the indictment. (Docket No. 61, p. 16).

offenses"). The defendant, essentially, contends that the indictment fails to contain sufficient facts for each of these four object offenses. I will address in turn the arguments as to each object offense.

Initially, I note that an indictment for conspiracy need not allege with technical precision all the essential elements of the object offenses, nor state such object with the detail which would be required in an indictment for committing the substantive offense. Wong Tai v. United States, 273 U.S. 77, 81 (1927) (internal citations omitted). "In charging such a conspiracy certainty, to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is necessary." Id. (internal citations and quotation omitted). See also Yefsky, 994 F.2d at 893; United States v. Fusaro, 708 F.2d 17, 23 (1st Cir. 1983). "[A]llegations respecting the purpose of a conspiracy need only be sufficient to show that it was of criminal character, and to describe it with sufficient certainty so that the record will bar a second prosecution for the same offense." Freedman v. United States, 64 F.2d 661, 662 (1st Cir. 1933) (internal citations omitted).

With respect to Count Four's first charged object offense, the indictment charges that the defendants conspired "to conduct and attempt to conduct a financial transaction affecting interstate commerce, which transaction involved the proceeds of specified unlawful activities, that is, securities and wire fraud, with the intent to promote the carrying on of specified unlawful activities...." (Docket No. 3, p. 22). The defendant argues that this language is insufficient because it fails to allege Jeffrey Reyes's knowledge or intent, and fails to identify what "profits" constituted the proceeds of a specified unlawful activity. These arguments are unavailing. The indictment specifically states that the defendant entered the conspiracy "knowingly and willfully" and that he conducted the financial transaction "with the intent to promote" a specified unlawful activity. (Id.). Thus, the defendant's knowledge and intent are adequately described.

Also without merit is defendant's argument that Count Four's first object offense does not specify what profits constituted "the proceeds of specified unlawful activity" under 18 U.S.C. § 1956(a)(1). Defendant cites United States v. Santos, in which a plurality of the Supreme Court agreed that the rule of lenity requires that the ambiguous term "proceeds" in 18 U.S.C. § 1956(a)(1) be interpreted to refer to profits, not gross receipts. 553 U.S. 507, ___; 128 S.Ct. 2020, 2026 (2008). However, Santos pertains to the government's burden of proof at trial. See id. at ___, 128 S.Ct. at 2023. At the indictment stage, since a conspiracy charge is not held to the same level of precision as a charge of the substantive offense, it is not fatal that Count Four's first object offense uses the statutory term "proceeds" rather than "profits" in alleging the object offense of money laundering.

With respect to Count Four's second and third object offenses, the defendant argues that the indictment fails to properly allege the defendant's intent to disguise or conceal the nature, location, source, or control of the proceeds. (Docket No. 57, p. 6). The defendant is again mistaken. The second object offense stated in Count Four specifically alleges that "the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of [a] specified unlawful activity." (Docket No. 3, p. 22). More is not required. Moreover, although Count Four's third object offense fails to contain in the charging paragraph specific language concerning the defendant's intention to conceal or disguise the nature of the proceeds (id.), the indictment's description of the "manner and means" of the conspiracy charged in Count Four contain allegations that the defendants would maintain accounts in banks outside the United States (id., p. 24, ¶5) and would transfer funds to their banks "in an attempt to conceal the illegal nature, origin, and source of the funds they received from GRT...." (Id., p. 24, ¶6). The allegations in the indictment are therefore sufficient as to the Count Four's third object offense.

With respect to Count Four's fourth object offense, which is based on 18 U.S.C. §1957, defendant again argues that the indictment fails to allege what the "profits" are, and merely refers to "proceeds" of unlawful activity. Section 1957 concerns "criminally derived property of a value greater than $10,000 and [that] is derived from specified unlawful activity." 18 U.S.C. § 1957(a). The First Circuit has implicitly adopted the interpretation of other courts of appeals that the phrase "criminally derived property" is equivalent to the phrase "proceeds of specified unlawful activity" in 18 U.S.C. § 1956. United States v. Castellini, 392 F.3d 35, 45 n.7 (1st Cir. 2004) (citing cases). Nevertheless, the indictment sufficiently alleges a conspiracy to violate section 1957 by tracking the statutory language and including supporting facts that allege transactions (1) in amounts over $10,000 (2) of funds obtained from "the illegal purchase and sale of securities to GRT investors," (3) derived from "specified unlawful activities, that is, securities and wire fraud," as detailed in the "manner and means" allegations and the list of overt acts. (Docket No. 3, p. 22-23, 25-28). In particular, Jeffrey Reyes is named in numerous overt acts, including a wire transfer to an account located outside the United States and thirteen other monetary transactions, nearly all of which exceed $10,000.00. Count Four also expressly incorporates the other counts' detailed allegations of the underlying frauds. (Docket No. 3, p. 22-28). Therefore, defendant's argument that the indictment insufficiently informs him of the property at issue is without merit.

Equally unavailing is the claim that Count Four's fourth object offense fails to adequately allege the defendant's knowledge or intent. The indictment specifically alleges that the defendants conspired "to knowingly engage in a monetary transaction" in criminally derived property; in doing so, the allegations track the knowledge requirement set forth in the statute. See 18 U.S.C. §1957. Again, more is not required.

United States v. Jeffrey Oscar Reyes-Rivera                                                                                Page 13
Cr. No. 08-324 (ADC/BJM)
REPORT AND RECOMMENDATION

In summary, Count Four alleges that defendant "knowingly and willfully" conspired to commit the underlying object offenses, and its detailed factual allegations are sufficient to show that the purpose of defendants' conspiracy was criminal in character. The allegations inform defendant of the substantive offenses he is charged with conspiring to commit and enable him to enter a plea without fear of double jeopardy. Like Counts One and Two, Count Four is sufficient under Rule 7(c)(1) and should not be dismissed.

## CONCLUSION

For the foregoing reasons, I recommend that defendant's motion to dismiss the indictment be **DENIED**.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen (14) days. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 19th day of April, 2010.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge